UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE: VIAGRA (SILDENAFIL CITRATE) PRODUCTS LIABILITY LITIGATION

This Document Relates to: ALL ACTIONS

Master File No.: 3:16-md-02691-RS

MDL No. 2691

**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

1. **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. This Order shall apply to the production of hard-copy and electronic documents by Pfizer Inc. and its agents, employees (current and former), representatives, subsidiaries, and other affiliated entities (collectively, "Pfizer"), as well as to the production of hard-copy and electronic documents by Plaintiffs. This Order also may apply to state court actions provided that the parties thereto so agree or the applicable court so orders.

Nothing in this Order alters a Party's rights, obligations, and responsibilities under the Federal Rules of Civil Procedure and any other applicable orders and rules, nor does anything in this Order impose additional burdens beyond those imposed by the Federal Rules of Civil Procedure or any other applicable orders or rules. The Parties reserve all objections under the Federal Rules of Civil Procedure and applicable decision authority for matters relating to the production of documents that are not specifically addressed in this Order.

2. **DEFINITIONS**

   (a)  **"Confidentiality Designation"** means the legend affixed to Documents for Confidential or Highly Confidential Information as defined by, and subject to, the terms of Stipulated Protective Order entered by the Court in this litigation.

1  (b) **"Document"** is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure.  The term "document" shall include hard-copy documents, electronic documents, and ESI as defined herein.

  (c) **"Electronic Document or Data"** means documents or data existing in electronic form at the time of collection, including but not limited to: e-mail or other means of electronic communications, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g., PDF).

  (d) **"Electronically stored information"** or **"ESI,"** as used herein has the same meaning as in Federal Rules of Civil Procedure 26 and 34.

  (e) **"Hard-Copy Document"** means documents existing in paper form at the time of collection.

  (f) **"Hash Value"** is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.  The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion.

  (g) **"Load files"** means electronic files provided with a production set of documents and images used to load that production set into a receiving party's document review platform, and correlate its data within that platform.

  (h) **"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

  (i) **"Metadata"** means:  (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, (iii) information, such as Bates numbers, created

1 during the course of processing documents or ESI for production, and (iv) information collected
2 during the course of collecting documents or ESI, such as the name of the media device on which
3 it was stored, or the custodian or non-custodial data source from which it was collected.

4   (j) **"Native Format"** means and refers to the format of ESI in which it was generated
5 and/or as used by the Producing Party in the usual course of its business and in its regularly
6 conducted activities. For example, the native format of an Excel workbook is a .xls or .xslx file.

7   (k) **"Optical Character Recognition" or "OCR"** means the process of recognizing
8 and creating a file containing, visible text within an image.

9   (l) **"Party" or "Parties"** means or refers to the named Plaintiffs and/or Pfizer in
10 the above-captioned matter, as well as any later added plaintiffs or defendants.

11   (m) **"Searchable Text"** means the native text extracted from an electronic document
12 and any Optical Character Recognition text ("OCR text") generated from a hard-copy document
13 or electronic image.

14   (n) **"Include" and "Including"** shall be construed to mean "include but not be
15 limited to" and "including, but not limited to".

16 **3. COOPERATION**

17   The Parties are aware of the importance the Court places on cooperation and commit to
18 cooperate in good faith throughout the matter consistent with this Court's Guidelines for the
19 Discovery of ESI. The Parties shall meet and confer in good faith on any issue regarding ESI, as
20 necessary, including any relating to custodians and data sources, that arise under this Order. In
21 the event the Parties cannot reach an agreement on a disputed matter, the Parties shall submit the
22 matter to the Court in accord with local rules.

23 **4. LIAISON**

24   The Parties have identified liaisons to each other who are and will be knowledgeable
25 about and responsible for discussing their respective Party's ESI efforts. Each e-discovery liaison
26 will be, or have access to those who are, knowledgeable about the technical aspects of the Party's
27 e-discovery systems, including the location, nature, accessibility, format, collection, search
28

methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

5. **PRESERVATION**

The Parties represent that they have issued litigation hold notices and taken reasonable steps to preserve data in this litigation. The Parties shall maintain, preserve, and not render less reasonably accessible documents which may contain responsive data, or are produced pursuant to this Order and/or in response to requests for production of documents.

6. **IDENTIFICATION OF DOCUMENTS AND ESI**

The Parties agree to meet and confer to discuss (a) the identification of custodial and non-custodial data sources, and (b) additional parameters for scoping the review and production efforts (e.g., application of date ranges, de-NIST'ing, etc.).

With respect to custodial files, the Parties will (a) identify and select custodians most likely to possess relevant documents pursuant to any Pretrial Orders entered by the Court governing discovery; and (b) apply agreed-upon search terms to those custodians' data sources. The Parties shall first exchange search terms, then meet and confer to discuss the search terms and the proper methodology for validating those search terms (such as sampling of documents that do not hit on the search terms). The selection of search terms may need to be iterative.

The Producing Party will review all hard-copy and electronic documents that contain any agreed-upon search terms for responsiveness and privilege prior to production. The fact that a document may have been retrieved by application of any agreed-upon search terms shall not prevent the Producing Party from withholding the document for lack of responsiveness or privilege.

No specific document of which the Producing Party is aware and knows to be responsive shall be withheld from production because it was not identified as responsive by the agreed methodologies or was not within an identifiable data repository or custodial or non-custodial data source.

**7. PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS**

(a) **Production Format.** Unless otherwise specified in Section 7(b) or pursuant to Section 7(k) below, the Parties shall produce all documents in black-and-white, single page, 300 DPI, tagged image file format ("TIFF") images, utilizing Group IV compression, with corresponding extracted full text and, to the extent possible, applicable metadata as specified in Exhibit A. Image file names will be identical to the corresponding Bates numbered images, with a ".tif" file extension. The Producing Party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size, to the extent possible. The Bates number must not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to the position as possible while preserving the underlying image.

(b) **Native Format.** The Parties shall produce Excel spreadsheets, audio files, and video files in native format, unless redacted, with applicable metadata as specified in Exhibit A and extracted searchable text. If production in native format is necessary to decipher the meaning, context, or content of a Word or PowerPoint document produced in TIFF, the Producing Party will honor reasonable requests made in good faith for the production of specific documents in native format.

(c) **Embedded Objects.** If documents contain embedded objects, the Parties shall extract the embedded objects as separate documents and treat them like attachments to the document. To the extent reasonably possible, images embedded in emails shall not be extracted and produced separately.

(d) **Load Files.** Every document referenced in a production image load file must have all corresponding images, text, and metadata. The name of the image load file must mirror the name of the delivery volume and should have a .LFP, .OPT, or .DII extension. The volume names must be reasonably consecutive (e.g., ABC001, ABC002). The load file must contain one line per image. Every image in the delivery volume must be contained in the image load file. The image key must be named the same as the Bates number of the image. Load files must not span across media.

1      (e) **Foreign Language Documents.** Hard-copy documents and ESI that contain languages other than English, in whole or in part, shall be produced in the original language(s), along with all existing translations of the searchable text maintained in the ordinary course of business.

    (f) **Text Files.** A single text file shall be provided for each document. The text file name shall be the same as the Bates number of the first page of the document to which it corresponds. Files names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs). In these instances, a text file will be created using OCR and will be produced in lieu of extracted text. Except in the case of redacted documents, the Receiving Party will not be required to rely upon a less accurate version of the text than the Producing Party.

    (g) **TIFFs of ESI.** TIFFs of ESI shall convey the same information and image as the original document, including all non-redacted elements and formatting which are visible in any view of the document in its native application.

    (h) **Bates Numbers.** All Bates numbers will consist of a three digit Alpha Prefix, followed immediately by an 8 digit numeric: AAA########. There must be no spaces in the Bates number. Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits.

    (i) **Metadata Fields and Processing.** Each of the metadata fields set forth in Exhibit A that can be reasonably extracted from ESI will be produced for each document. If a Party becomes aware of a systemic issue extracting or processing metadata, the Party shall notify all other Parties and they shall meet and confer to arrive at a mutually acceptable resolution of the issue. The Parties are not obligated to populate manually any of the metadata fields in Exhibit A if such fields cannot be extracted from a document.

    (j) **Native File Image Placeholders.** A Bates-stamped placeholder TIFF, bearing the legend "This document has been produced in native format" shall be provided for ESI produced

in native format; these placeholders will be Bates numbered in the same way as any other TIFF, and the Bates number of that single page shall be used as the BegBates and EndBates of the associated document.

(k) **Databases, Structured, Aggregated or Application Data.** The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured or aggregated data source.

(l) **Scanning of Hard-Copy Documents.** The Parties may produce hard-copy documents either in their hard-copy form or as scanned images. In scanning paper documents, documents are to be produced as they are kept. For documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable. The Parties will use best efforts to unitize documents.

(m) **Proprietary Software.** To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the parties shall meet and confer to ensure that the data is produced in a format, or made accessible in a manner, that does not restrict the receiving party's ability to utilize the data fully and to minimize any expense or burden associated with the production of such documents in such format or access to such data in such manner.

(n) **Confidentiality Treatment.** The Parties have entered into a Stipulated Protective Order in this matter, which specifies various confidentiality treatment levels for use in this matter. The Producing Party will brand any confidentiality endorsements in a corner of any TIFF images representing the produced item. Those endorsements must be in a consistent font type and size and must not obscure any part of the underlying image or Bates number, to the extent possible.

(o) **Redactions.** A Party may use redactions to protect attorney-client or attorney work product privileges, or consistent with the Protective Order entered in this matter. Other than as allowed by the Stipulated Protective Order, no redactions for relevance may be made within a produced document or ESI item. For redacted items which were originally ESI, unaffected, non-privileged metadata fields will be provided and will include all non-redacted data. The basis for each redaction must be provided as metadata, except for documents already produced as of the date of this Order.

(p)     **Color.**  The Parties shall honor reasonable and specific requests for the production of documents as color images.

(q)     **Parent-Child Relationships.**  Parent-child relationships (the association between an attachment and its parent document or between embedded documents and their parent) shall be preserved.

(r)     **Family Relationships.**  Family relationships often exist between an e-mail and its attachments, but can also be found amongst a stand-alone document and files originally contained within the parent document, which are subsequently de-embedded as part of discovery processing.  Non-relevant attachments may be excluded from production.  All non-relevant attachments excluded from production shall be produced as a slipsheet or placeholder.

**(s)**     **OCR.** OCR software should be set to the highest quality setting during processing. Documents containing foreign language text will be OCR'ed using the appropriate settings for that language, e.g., OCR of German documents will use settings that properly capture umlauts. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

**(t)**     **Date Fields Time Zone.** All documents shall be processed so as to show fielded dates and times in UTC.

**(u)**     **Explanation of Inability to Produce Metadata.** If the Producing Party is unable to produce metadata for a particular field or ESI document, the Parties shall then meet and confer to attempt to resolve the problem.

(v)     **Lost, Destroyed or Irretrievable ESI.**  If a Producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Producing Party shall comply with its obligations under the Federal Rules of Civil Procedure.

8.  PRODUCTION MEDIA

The Producing Party shall produce documents on readily accessible, computer or electronic media as the Parties may hereafter agree upon, including CD-ROM, DVD, external hard drive, or via secure FTP site (the "Production Media").  Each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the

1  date of the production of documents on the Production Media as well as the sequence of the
2  material in that production.  The Producing Party shall accompany all document productions
3  with a transmittal cover letter identifying by Bates number the documents produced.
4      **9. PRIVILEGE LOG**
5      Within sixty (60) days after production absent agreement of the Parties, the Producing
6  Party shall provide the Receiving Party with a log of the documents entirely withheld from
7  production for a claim of attorney-client privilege, work product protection, or other applicable
8  privilege or immunity, as provided for under PTO __:  Discovery and Other Proceedings
9  Relating to General Causation.  The log will be produced in Excel or CSV format, and
10 populated with the following extracted metadata fields, to the extent providing this information
11 will not destroy privilege:  Custodian, From, To, CC, BCC, Subject, File Name, File Extension,
12 File Path, Date Sent, Date Created, Date Last Modified.  The log also will provide the
13 privilege(s) claimed.  In-house attorney names shall be designated with an asterisk; outside
14 counsel attorney names will be designated with a double asterisk.
15     **10. INADVERTENT DISCLOSURE**
16     The Parties agree that they do not intend to disclose information subject to a claim of
17 attorney-client privilege or attorney work product protection.  If, nevertheless, a Producing
18 Party inadvertently discloses privileged or work product information to another party, such
19 disclosure shall not constitute or be deemed a waiver or forfeiture of any claim of attorney-
20 client privilege or work product protection that the Producing Party would otherwise be entitled
21 to assert with respect to the inadvertently disclosed information and its subject matter.
22     If the Producing Party notifies the Receiving Party of the inadvertently disclosed
23 documents or information, the Receiving Party shall return or destroy, within fourteen (14)
24 business days, all copies of such documents or information and upon written request provide a
25 certification of counsel that all such inadvertently disclosed documents or information have
26 been returned or destroyed.  After a Producing Party provides written notice of inadvertent
27 production, a Receiving Party shall not copy, distribute, or otherwise use in any manner the
28 inadvertently disclosed documents or information, and shall notify all persons to whom the

9
STIPULATED ORDER RE:  DISCOVERY OF ELECTRONICALLY STORED INFO.

Receiving Party has disseminated a copy of the inadvertently disclosed documents or information that the documents or information are subject to this Order and may not be copied, distributed, or otherwise used pending further notice from the Court.

**11. COST SHIFTING**

Generally, the costs of production pursuant to this Order shall be borne by the Producing Party. However, the Court may apportion the costs of electronic discovery in accordance with the Federal Rules of Civil Procedure.

**12. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: _____ */s/ Ernest Cory*
Counsel for Plaintiff

Dated: _____ */s/ Joseph G. Petrosinelli*
Counsel for Defendant

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: 10/25/16

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

**EXHIBIT A: FIELDS AND METADATA TO BE PRODUCED**

| Field | Definition | Doc Type |
|---|---|---|
| BEGBATES | Beginning Bates number (production number) | All |
| ENDBATES | Ending Bates number (production number) | All |
| PAGECOUNT | Number of pages in the document | All |
| BEGATTACH | First Bates number of family range (i.e. Bates number of the first page of the parent e-mail) | E-mail |
| ENDATTACH | Last Bates number of family range (i.e. Bates number of the last page of the last attachment) | E-mail |
| FILESIZE | File size in KB | All |
| FILEPATH | Original file/path of the location where the item was located at the time of collection. | E-document |
| FILEEXT | File extension | E-document |
| FILENAME | File name | E-document |
| CUSTODIAN | Name of person or other data source (non-human) whose documents/files are produced. Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (e.g., SmithJA or Smith, John A.). | All |
| FROM | Sender | E-mail |
| TO | Recipient | E-mail |
| CC | Additional Recipients | E-mail |
| BCC | Blind Additional Recipients | E-mail |
| SUBJECT | Subject line of e-mail | E-mail |
| DATESENT | Date sent (mm/dd/yyyy hh:mm:ss AM) | E-mail |
| DATECREATED | Date file was created | E-document |
| LASTMODIFIED | Last modified date | E-document |
| HASHVALUE | MD5 hash value | All |
| PARENT_ATTACHMENT | "P" for parent; "A" for attachment. | E-mail |
| REDACTED | Redaction status. "Yes" for redacted documents; "No" for un-redacted documents. | All |
| CONFIDENTIALITY | Confidentiality level if assigned. | All |
| NATIVEFILELINK | For documents provided in native format only | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |
| EMAILFOLDER | Folder location where the email was located at the time of the collection | E-mail |
| ATTACHCOUNT | Number of attachments to an e-mail | E-mail |
| ATTACHNAMES | Names of each individual Attachment, separated by semi-colons | E-mail |
| TITLE | Internal document title property | E-document |

| Field | Definition | Doc Type |
|---|---|---|
| DATERCVD (mm/dd/yyyy hh:mm:ss AM) | Date Received | E-mail |
| AUTHOR | Internal document property | E-document |
| LASTMODIFIEDBY | Internal document property | E-document |
| DOCUMENTTYPE | Descriptor for the type of document: **"E-document"** for electronic documents not attached to e-mails; **"E-mail"** for all e-mails; "E-attachment" for files that were attached to e-mails; and **"Physical"** for hard copy physical documents that have been scanned and converted to an electronic image. | All |