# EXHIBIT  1

Pages 1 - 25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Richard Seeborg, Judge

```
IN RE: VIAGRA (SILDENAFIL       )
CITRATE) PRODUCTS LIABILITY     )
LITIGATION                      )   MDL No. 16-02691 RS
_____ )
                                )
This Document Relates to:       )
                                )
      ALL ACTIONS               )
_____ )
```

San Francisco, California
Friday, October 14, 2016

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiffs:**

    Cory Watson, P.C.
    2131 Magnolia Avenue South
    Birmingham, AL  35205
    (205) 328-2200
**BY:  ERNEST CORY**
    **KRISTIAN RASMUSSEN**

**For Plaintiffs:**

    Williams & Connolly, LLP
    725 Twelfth Street, N.W.
    Washington, DC  20005
    (202) 434-5000
    (202) 434-5029 (fax)
**BY:  JOSEPH G. PETROSINELLI**

Reported By:  Lydia Zinn, CSR No. 9223, FCRR, Official Reporter

```
 1   APPEARANCES:

 2   For Plaintiffs:
                        Robins Kaplan LLP
 3                      800 Lasalle Avenue, Suite 2800
                        Minneapolis, MN  55402
 4                      (612) 349-8500
                        (612) 339-4181 (fax)
 5               BY:  MUNIR R. MEGHJEE

 6   For Plaintiffs:
                        Levin Simes LLP
 7                      44 Montgomery Street, 32nd Floor
                        San Francisco, CA  94104
 8                      (415) 426-3000
                        (415) 426-3001 (fax)
 9               BY:  RACHEL B. ABRAMS

10   For Plaintiffs:
                        Motley Rice, LLC
11                      28 Bridgeside Boulevard
                        Mount Pleasant, SC  29464
12                      (843) 216-9265
                        (843) 213-9450 (fax)
13               BY:  ANN E. RICE ERVIN

14   For Defendant Pfizer, Inc.:
                        DLA Piper LLP (US)
15                      33 Arch Street, 26th Floor
                        Boston, MA  02110
16                      (617) 406-6009
                        (617) 406-6109 (fax)
17               BY:  MATTHEW A. HOLIAN
                        JESSICA WILSON
18
     For Defendant Pfizer, Inc.:
19                      DLA Piper, LLP (US)
                        1251 Avenue of the Americas
20                      27th Floor
                        New York, NY  10020
21                      (212) 335-4500
                        (212) 884-8546 (fax)
22               BY:  LOREN H. BROWN

23

24

25
```

1   <u>**APPEARANCES**</u>:

2   **For Defendant Pfizer, Inc.:**
                          DLA Piper, LLP (US)
3                         555 Mission Street, Suite 2400
                          San Francisco, CA  94105
4                         (415) 615-6005
                          (415) 659-7305 (fax)
5                  BY:  **GEORGE J. GIGOUNAS**

6   **For Defendant Pfizer, Inc.:**
                          Kaye Scholer LLP
7                         250 West 55th Street
                          New York, NY 10019-9710
8                         (212) 836-8000
                          (212) 836-8689 (fax)
9                  BY:  **LORI B. LESKIN**

10  **For Defendant Eli Lilly:**

11                        Covington & Burling
                          One City Center
12                        850 Tenth Street, N.W.
                          Washington, D.C.  20001-9710
13                        (202) 6662-5694
                   BY:  **MICHAEL X. IMBROSCIO**

14

15

16  **Also Present:**
    **Douglas Forrest, International Litigation Services**
17

18

19

20

21

22

23

24

25

**Friday - October 14, 2016**                                        **9:07 a.m.**

<b>P R O C E E D I N G S</b>

<b>---oOo---</b>

**THE CLERK:**  Calling Case 16-MD-2691, In re:  Viagra Products Liability Litigation.  Counsel, please state your appearances.

**MR. CORY:**  Good morning, Your Honor.  Ernie Cory, for plaintiffs.

**THE COURT:**  Good morning.

**MS. ABRAMS:**  Good morning, Your Honor. Rachel Abrams, for the plaintiffs.

**THE COURT:**  Good morning.

**MR. RASMUSSEN:**  Good morning, Your Honor. Kristian Rasmussen, for plaintiffs.

**THE COURT:**  Good morning.

**MR. FORREST:**  Douglas Forrest, consultant to the plaintiffs.

**THE COURT:**  Good morning.

**MS. RICE-ERVIN:**  Ann Rice-Ervin, for the plaintiffs.

**MR. MEGHJEE:**  Munir Meghjee, Your Honor, for the plaintiffs.

**THE COURT:**  Good morning.

**MR. PETROSINELLI:**  Your Honor, good morning. Joe Petrosinelli, of Williams and Connelly, for Pfizer.

**THE COURT:**  Good morning.

1          **MR. BROWN:**  Good morning, Your Honor.  Loren Brown,

2    DLA Piper, for Pfizer.

3          **THE COURT:**  Good morning.

4          **MS. LESKIN:**  Good morning.  Lori Leskin,

5    Kaye Scholer, for Pfizer.

6          **THE COURT:**  Good morning.

7          **MR. WILSON:**  Good morning.  Jessica Wilson,

8    DLA Piper, for Pfizer.

9          **THE COURT:**  Good morning.

10         **MR. HOLIAN:**  Matt Holian, DLA Piper, for Pfizer.

11         **MR. IMBROSCIO:**  Good morning, Your Honor.  My name is

12    Michael Imbroscio.  I'm not here on the Pfizer MDL.  I'm here

13    for Eli Lilly for the motions.

14         **THE COURT:**  Very well.  Good morning.

15         **MR. GIGOUNAS:**  George Gigounas, DLA Piper, for

16    Pfizer.

17         **THE COURT:**  Good morning.

18       Let's first take up the joint agenda issue just where we

19    are, because it looks like things are moving along.  And I'm

20    not sure we have to take too much time on this.  I did get your

21    proposed joint agenda, and the issues; the handful that you

22    want to touch upon.  And we can go over those.

23       I might mention I did -- I don't know if you've seen it,

24    but I think -- hopefully it's up and running.  I looked at it,

25    but then I didn't check to see if it's on the website; but we

1    do have a website now that's on the -- if you look at our CAND

2    website, take a look, and make sure you're fine with it.  It's

3    pretty straightforward.

4        Okay.  With respect to the proposed joint agenda, why

5    don't you just walk through the issues that you identified?

6        I thought maybe Judge Kim was going to be here, but are

7    you -- have you -- are you going to see her today, as well?

8        **MR. PETROSINELLI:**  She's scheduled a hearing on that

9    one outstanding issue for 10:00.  I assume it will be in her

10   courtroom.

11       **THE COURT:**  Yeah.  I assume she may be coming up here

12   shortly.  She at some point told me she was going to swing by.

13       But in any event, so the first item is adoption of a

14   Master Complaint.  And that was in the works.

15       **MR. CORY:**  Yes, sir.  That's our issue, Your Honor.

16   Good morning.

17       The issue is this, Your Honor.  I think both have been

18   filed.  And we really were just -- for point of clarification,

19   were we to expect an order from the Court adopting the

20   consolidated Complaint, or is that --

21       **THE COURT:**  You think -- do I need to do that?

22       **MR. CORY:**  It's -- typically it's done.

23       **THE COURT:**  Okay.  Well, just an order saying --

24   acknowledging the lodging of the -- or actually opining in some

25   fashion on the adequacy of the Complaint?

1    **MR. CORY:**  Would you like me to prepare one and

2  submit it?

3    **THE COURT:**  Yeah.  Why don't you do that?

4     Did you have any --

5    **MR. PETROSINELLI:**  No.

6    **THE COURT:**  -- view on this subject?

7    **MR. PETROSINELLI:**  No, I don't, as long as it's a

8  nonsubstantive -- just sort of acknowledging that the

9  Complaint's filed or something.

10    **THE COURT:**  That it's existing.

11     Well, you know, if you think that's useful, Mr. Cory,

12  fine.  Go ahead and give me a proposed order.

13    **MR. CORY:**  Thank you, Your Honor.

14    **THE COURT:**  Okay.  And then I did sign an Order that

15  approved the short-form version.

16    **MR. CORY:**  Right.

17    **THE COURT:**  And so is there any action that I need to

18  take on that --

19    **MR. CORY:**  No, sir.

20    **THE COURT:**  -- subject?  Okay.

21    **MR. CORY:**  Well, with respect to Item Number 2 --

22    **THE COURT:**  Yeah.

23    **MR. CORY:**  It dealt with mixed-use cases involving

24  Lilly.  And I've spoken to Mr. Imbroscio.  And Joe and I have

25  spoken.  And I think until the pattern rules, we would like to

```
 1   be able to -- be able to not have a Short Form Complaint

 2   dealing with --

 3             THE COURT:   The hybrid cases?

 4             MR. CORY:   -- the hybrid cases.

 5             THE COURT:   Okay.  Well, we'll get to the question of

 6   jurisdiction motion/stay with respect to those cases in a few

 7   moments, but that's fine.   In terms of filing the Short Form

 8   Complaint, I don't think that's a problem.

 9             MR. CORY:   With respect to Issue Number 3, Your

10   Honor, my partner, Kristian Rasmussen, knows more about it than

11   I do.

12             MR. RASMUSSEN:   Sure.

13             MR. CORY:   But it's --

14             THE COURT:   Is there -- I thought we had worked out

15   the issues with respect to --

16             MR. RASMUSSEN:   Yeah.

17             THE COURT:   -- the fact that you didn't need to

18   necessarily --

19             MR. RASMUSSEN:   We just need some clarification from

20   the folks on our side, because I believe what happened is this.

21   And I'm not a hundred percent sure on this, but typically what

22   happens is after, you know, an MDL is created, we have a direct

23   filing order.   People will inadvertently file individual cases

24   in the master docket.   Right?

25             THE COURT:   Okay.
```

1      **MR. RASMUSSEN:**  And so I think that happened.

2      And so the Court entered an Amended Pretrial Order 5.

3      And so our office and also the counsel -- Ms. Abrams'

4   office has been communicating both with the Court's chambers

5   and also with the Clerks Office.  And so we just need some

6   clarification on two issues.

7      Number one.  When individual complaints are filed, can we

8   file them directly in to the MDL, obviously associating those

9   cases with the master docket, and hoping that people don't

10  inadvertently, you know, click the wrong button when they are

11  electronic filing?

12     And then also number two is:  Currently the Clerks Office

13  has informed us that every attorney listed on the Complaint

14  needs to file, you know, the pro hac vice.

15     **THE COURT:**  I thought I had addressed that and give

16  some relief on that score.  So the Clerks Office is now pushing

17  back against on that issue?

18     **MR. RASMUSSEN:**  That is my understanding.  That's

19  where things are right now.  And I think there's just been some

20  miscommunication.  And we just wanted to get some clarification

21  from the Court today.

22     **THE COURT:**  Well, on the question of -- let me go

23  back and see where things stand on that.  I mean, my

24  recollection was that, as I've done in other circumstances, I

25  did give some relief on the requirement that every -- once it's

1  MDL, that you have to go and do the pro hac submission, even

2  though it's nice for unappropriated funds, but let me go back

3  and check.

4      I have no intent to require it, but I'll talk to the

5  Clerks Office and find out what the problem is.

6          **MR. RASMUSSEN:**  You did enter an Order --

7          **THE COURT:**  They're refusing to implement that?

8          **MR. RASMUSSEN:**  -- that says any member in good

9  standing of the federal bar doesn't need to file for admission,

10  but we just need some clarification as we go forward, because

11  Pretrial Order Number 5 says you can't directly file.  So I

12  think that created the confusion then.

13          **THE COURT:**  Okay.  Well, my intent is to set up a

14  mechanism by which you don't have to --

15          **MR. RASMUSSEN:**  Right.

16          **THE COURT:**  -- do a separate pro hac admission each

17  time, but let me talk to the Clerks Office, and find out why

18  they're creating an issue with respect to that.

19          **MR. RASMUSSEN:**  Thank you, Your Honor.

20          **THE COURT:**  Now, the second issue that you said

21  was -- that's the first one.  What was the second issue?

22          **MR. RASMUSSEN:**  The second issue --

23          **MR. CORY:**  Filing it into the MDL.

24          **MR. RASMUSSEN:**  Oh, yeah.  Directly filing into the

25  MDL, as opposed to filing directly in to the Northern District

1  of California.

2         **THE COURT:**  Okay.  And on that issue, as things stand

3  today, if somebody weighs into the fray with a case and they

4  file it, your concern is that it's going into the MDL, or it's

5  not going into the MDL?

6         **MR. RASMUSSEN:**  No, Your Honor.  So I believe it was

7  one of the first or second orders entered by the Court, once

8  the cases were transferred and consolidated here before Your

9  Honor, that we began filing directly into the MDL --

10         **THE COURT:**  Right.

11         **MR. RASMUSSEN:**  -- and associated cases.

12         **THE COURT:**  Right.

13         **MR. RASMUSSEN:**  I think, as is always the case -- and

14  it happens in our office.  I was just telling Ernie that on the

15  flight out here; that sometimes people will inadvertently click

16  the wrong button, and it's entered on the master docket under

17  the master file number, as opposed to juster being identified

18  as an associated case.  And so I'm not exactly sure how things

19  became so confused, but apparently a lot of folks --

20     So then with the initial entry of Pretrial Order 5, I

21  believe people were under the impression --

22     And then after, talking to the Clerks Office, it was their

23  understanding as well that we could no longer directly file in

24  to the MDL, but we could file directly into the

25  Northern District.

```
 1        And I think the Court's intent is we can directly file

 2   into the MDL, and so long as --

 3            THE COURT:  Well, if they file it, it doesn't go

 4   initially right into the MDL.  Then I assume it can just be a

 5   way station; and then by further order from me, it goes into

 6   the MDL.

 7            MR. RASMUSSEN:  Correct.  That is true.  That's

 8   right.

 9            THE COURT:  It maybe requires an additional step.  I

10   don't think --

11        Somehow this all sounds to me like ministerial things that

12   we can work out.

13            MR. RASMUSSEN:  Absolutely.

14            THE COURT:  Okay.  Well, I'll --

15            MR. RASMUSSEN:  It would help us on our side.  We're

16   just trying to communicate with people.  They continue to ask

17   questions.

18            MR. CORY:  Your Honor, if we can assist any way, if

19   we can do anything to inform other plaintiffs' counsel on the

20   procedure that you would like us to implement, we're here to do

21   that.

22            THE COURT:  Okay.  Good.  Go ahead.

23            MR. RASMUSSEN:  One last ministerial thing that --

24   it's sort of interrelated here, since we don't have a master

25   consolidated complaint for the mixed-use cases.
```

1          **THE COURT:**  You're right.

2          **MR. RASMUSSEN:**  Then, for clarification, PTO 5

3  requires everyone that had a case pending at the time the

4  master consolidated complaint is adopted to file a Short Form

5  Complaint within 60 days; but obviously, that 60-day --

6          **THE COURT:**  You're talking about the hybrid cases?

7          **MR. RASMUSSEN:**  That's correct.  So since we don't

8  have one, we can communicate to other people that they don't

9  have --

10          **THE COURT:**  Right.  Weren't we just talking about

11  that?

12          **MR. CORY:**  Right.

13          **THE COURT:**  Okay.  Yeah.  So if the request, as I

14  understand it, was *Can we be relieved of the short-form*

15  *obligation in the hybrid cases?* then the answer is "Yes."

16          **MR. RASMUSSEN:**  Thank you, Your Honor.

17          **THE COURT:**  Okay.  Then we've got update on the

18  status of unopposed and/or joint proposed pretrial orders.  And

19  then you've got a Common Benefit Order subitem.

20          **MR. PETROSINELLI:**  Yes, Your Honor.  I think we just

21  want to alert the Court that there are a couple more stipulated

22  orders probably coming.  There's a Common Benefit Form Order,

23  which is mostly really for the plaintiffs, but we're just

24  quickly looking at it.  I don't think we're going to have much

25  issue with it.

1              There's actually also another proposed order regarding

2       authentication of documents.  And --

3              **THE COURT:**  Okay.

4              **MR. PETROSINELLI:**  -- I think Mr. Cory and I have

5       used that order in other MDLs.  And so I don't think it will be

6       an issue; but those should show up fairly soon.

7              **THE COURT:**  Okay.  I will look for those.  And looks

8       like --

9              **MR. CORY:**  We're probably a little light on the

10      Common Benefit Order, Your Honor.  You need that.  And we

11      apologize for the delay.

12             **THE COURT:**  What will be covered in that order?

13             **MR. CORY:**  Mostly, accountability for us, and

14      creation of common benefit accounts to finance the litigation.

15             **THE COURT:**  Does that have any --

16          We had talked about this right at the beginning.

17          -- a mechanism for sort of -- be it Special Master or

18      accountant or some periodic assessment of how things are

19      coming.  And is that included in there, or not?

20             **MR. CORY:**  I think what we have is annual audits of

21      time and of expenses, and that that would be provided on an

22      annual basis.

23             **THE COURT:**  Okay.  In your experience, as to both of

24      you, annual -- is that common, or is it more frequent that

25      there is some checking?

```
 1          MR. CORY:  I would say annual is pretty regular.
 2  It's pretty standard.
 3          THE COURT:  Pretty standard?  Okay.  All right.
 4          MR. CORY:  Right now there's not a whole lot going
 5  on, other than time submission.  And I think once we start
 6  hiring experts and spending money, it will get a little bit
 7  more --
 8          THE COURT:  Right.  I should warn you that I'm going,
 9  as I do, as I have every year for the last couple years, to our
10  annual MDL conference in Florida in about three weeks.  And
11  then I'll come back with all sorts of new ideas.  So it's
12  probably good that we're having this now.  The next one we
13  have, I'll have all sorts of ideas.
14          MR. CORY:  We'll hand you the whole order ready to
15  take with you.  Okay?
16          THE COURT:  All right.  So I'll be looking for a
17  couple of these orders coming in.
18      The authentication order is just an understanding between
19  the parties that -- a protocol on streamlining authentication
20  battles?
21          MR. PETROSINELLI:  Right.  And so we're producing
22  documents for the corporation --
23          THE COURT:  Right.
24          MR. PETROSINELLI:  -- so that they don't have to
25  depose people to authenticate them, and so on.
```

1          **THE COURT:**  Good.  I think that's a good idea.

2     Okay.  Update on status of discovery.  Have you been

3 leaving Magistrate Judge Kim alone, or has she been busy?

4          **MR. PETROSINELLI:**  We've been leaving her alone.

5 Your Honor, as you know, actually, Mr. Corey and I did reach

6 agreement on the discovery plan, and really --

7          **THE COURT:**  Mm-hm.

8          **MR. PETROSINELLI:**  -- on the substance of it.

9     There is this one ESI-related issue that is before the

10 Magistrate today.

11     But we've been operating under the plan.  We've produced a

12 lot of documents so far of the nature of regulatory files

13 which -- you know, for a product that's been on the market for

14 18 years, it's a significant file.

15          **THE COURT:**  Right.

16          **MR. PETROSINELLI:**  And other sorts of documents like

17 that.

18     And I think the next stage under the Order is for us to

19 start producing other company files.

20     And so, yeah, it's going just fine.  And I think the rest

21 of this year, as per the plan, and into early next year we'll

22 sort of be completed with document production --

23          **THE COURT:**  Good.

24          **MR. PETROSINELLI:**  -- for the General Causation

25 phase.

1        THE COURT:  Good.

2        MR. CORY:  Your Honor, we will be filing -- serving

3  document requests and interrogatories on defendants probably

4  pursuant to that discovery order probably next week, which I'm

5  sure will be well received.

6        MR. PETROSINELLI:  I can't wait to see those.

7        THE COURT:  Yeah.

8        MR. CORY:  But we -- and then we will probably be

9  designating custodial -- custodies that we want files from, but

10 we really need to deal with this discrete issue that we're

11 arguing today first.

12        THE COURT:  Okay.

13        MR. CORY:  We're moving forward with discovery.

14        THE COURT:  Okay.  Good.  I'm glad to hear it.

15     I will want to set another get-together probably in about

16 60 days or thereabouts.  And seems to work -- on early Fridays

17 is when you all prefer it?  Is that.

18        MR. PETROSINELLI:  I think last time we were -- I

19 think the preference for folks, if it was okay with Your Honor,

20 was for Wednesdays.

21        THE COURT:  Oh, Wednesdays.

22        MR. PETROSINELLI:  This week it was because of the

23 Jewish holidays we had moved it to Friday.

24        THE COURT:  Wednesdays are fine with me.

25     If we went out about 60 days -- doesn't have to be exactly

1   60 -- that puts us right in the -- right before the holidays.

2          **MR. PETROSINELLI:**  Maybe the 14th.

3          **THE COURT:**  How about December 14th?

4          **MR. CORY:**  Is that a Wednesday?

5          **MR. PETROSINELLI:**  Yes.

6          **THE COURT:**  I do -- I do have a -- I have to go back

7   and look.  I think I have two trials that are set the week

8   before that could go into that week, or they both may go away.

9   So -- but I'll keep you posted.

10          I also have jury duty.  We'll see what happens on that.

11          Why don't we go ahead and say --

12          In California, you're not -- federal judges are not

13   exempted out of state jury duty.

14          So why don't we go ahead and set the 14th?  And do you

15   care about the time of day?  I mean, if there happened to be a

16   trial going on, if we set it in the afternoon, even if the

17   trial's going on, I end the trials at 1:30.  We could do this.

18          But if you'd like the morning, we can set the morning,

19   subject to just my keeping you posted on where things stand,

20   and --

21          **MR. CORY:**  If you have a trial going on, speaking for

22   the plaintiffs, we would prefer to start at 8:00, and try to

23   get in here before your trial if that's at all possible.

24          **THE COURT:**  Oh, boy.  Well I start at 8:30.  So that

25   would be kind of -- kind of a crunch.

1       And as you probably know, as well as I do, if I'm supposed

2   to start at 8:30, the good lawyers have some issue for me

3   before 8:30.  So I'm a little leery about doing that, but let

4   me look again on the two trials that are --

5       Have they gone away?

6           **THE CLERK:**  Judge, this one might go away.

7           **MR. CORY:**  Your Honor, the afternoon's fine.

8           **THE COURT:**  Oh come on.  That's the one that's got

9   the severance motion.

10      Okay.  Well, I'll tell you what.  How about we set it for

11  2:30?  And then if no trial is a happening, about two weeks

12  before that, I can -- I'll know about two weeks before.  I'll

13  tell you, and we'll shift back to 9:00 o'clock.

14          **MR. CORY:**  Perfect.  Thank you, Your Honor.

15          **THE COURT:**  Okay?  Is that fine with everybody?

16          **MR. PETROSINELLI:**  Yes, Your Honor.

17          **THE COURT:**  Okay.  We'll do that.

18      Okay.  So can we move to the issue with respect to

19  Eli Lilly and Cialis, and all of that?

20          **MR. PETROSINELLI:**  Yes.  Thank you, Your Honor.

21          **THE COURT:**  Okay.  This is both a motion to dismiss

22  with respect to the five cases brought against -- I guess

23  hybrid cases against Lilly, as well, and then the motion to

24  stay pending the MDL's decision with respect to -- MDL panel --

25  with respect to these *Lilly* cases.

1     And this probably is for you, first, Mr. Cory.  As I look

2  through it, it strikes me that however I decide the question,

3  the 12(b) question, don't I have to decide it, because the case

4  has to have a proper jurisdictional home -- these five cases.

5          **MR. CORY:**  Yes, sir.

6          **THE COURT:**  So even if we waited for the MDL, and the

7  MDL, let's say, decides that these cases are going to be with

8  me, I still have to decide the jurisdictional question, because

9  I could blissfully go along dealing with the case, and then

10  when the moment of truth comes where the case is to be spread

11  back, assuming they -- you know, they don't all settle out, I

12  could be in a position where I had a case that didn't have a

13  proper jurisdictional home.

14     That assumes, of course, I grant the motion.

15     If I don't grant the motion, then that's a bit of an

16  academic point.

17     But in your proposal, we should wait for the MDL to see

18  what they do.  I'm not sure why that works.

19          **MR. CORY:**  Well, Your Honor, I'll let Mike speak to

20  you first, because I think we can come to some agreement.

21          **THE COURT:**  Oh.

22          **MR. CORY:**  We're conceding.  We're willing -- based

23  on our conversations today, we're conceding that we're willing

24  to agree to the cases will be transferred back to the

25  plaintiffs' home state.

1              **THE COURT:**  Indiana?

2              **MR. CORY:**  Well, no.  The plaintiff, wherever they --

3              **THE COURT:**  Oh.  Where wherever the plaintiff is

4    located.

5              **MR. CORY:**  Yeah.  Wherever the plaintiff is located.

6              **THE COURT:**  Oh.  Wherever the plaintiff is located.

7    Yeah.  The defendant is in Indiana.

8              **MR. CORY:**  And we could do that by agreement, much

9    less without you having to rule on it, since --

10       Let Mike tell you what he's --

11             **THE COURT:**  Okay.  Good.

12             **MR. IMBROSCIO:**  Thank you, Your Honor.

13   Michael Imbroscio, from Covington Burling.

14       Our client has made a decision that they will not oppose

15   an MDL for their code objection hybrid cases.

16       They do plan to object to the Cialis-only cases being

17   shifted out here.  And the Panel will have to decide on that.

18             **THE COURT:**  Right.  And at the moment none of those

19   are filed in this District.

20             **MR. IMBROSCIO:**  That's correct.

21             **THE COURT:**  All I have is the hybrid cases.

22             **MR. IMBROSCIO:**  Yes.  And that leaves us in this odd

23   procedural posture where, as you've just articulated, you may

24   have these cases where there's never been proper jurisdiction.

25       After discussions with Mr. Cory, I think we can agree that

1  the Court hold off on that ruling.  We may be able to reach an

2  agreement where we would waive personal jurisdiction.

3          THE COURT:  Right.

4          MR. IMBROSCIO:  I'm just not in a position to make

5  that decision yet.

6          THE COURT:  Okay.  And that's obviously how we've --

7  it's a waivable point, as opposed to subject-matter

8  jurisdiction.  So it's all moot if you say, "No problem."

9          MR. IMBROSCIO:  Exactly.  And so --

10          THE COURT:  But you don't want to be put to that

11  choice until after the MDL decides what it's going to do.

12          MR. IMBROSCIO:  I think that's right, Your Honor.

13  And so, you know, we're fine if they just sit for the time

14  being, and see what the panel does.  And we can hopefully come

15  to an agreement.

16          THE COURT:  All right.  Well, I'm happy.  In that

17  instance, I'm happy to stay it.

18          MR. CORY:  Yeah.  Let me --

19          THE COURT:  I may not even formally stay it.  I just

20  don't act on it until after the --

21          MR. CORY:  Let's make sure we're clear.  They're

22  going to file something next Tuesday with the Panel, saying

23  they're not opposed to the mixed-use cases being before you.

24          THE COURT:  Isn't that tantamount to a waiver of

25  jurisdiction -- personal jurisdiction?

1          **MR. CORY:**  No.  We can assume that they're coming

2  here, if they're not going to oppose it; that those cases --

3  those other case that is are sitting with the Panel are coming

4  here.

5      And these cases, however -- whatever happens, will

6  eventually be here.

7          **THE COURT:**  But what I guess I don't quite understand

8  is:  Let's say they take the position that they are not

9  opposing the transfer of the hybrid cases to me, to here.

10         **MR. CORY:**  Right.

11         **THE COURT:**  This MDL proceeding.

12     But then if they're not waiving personal jurisdiction,

13  isn't there a moment where --

14     I mean, after this then gets dealt with, I have to deal

15  with this question.

16         **MR. CORY:**  Unless we consent.

17         **THE COURT:**  Unless you agree.

18         **MR. CORY:**  Unless we consent.

19         **THE COURT:**  All right.  So it's not like this is

20  going away forever.  You just are saying, "Hold off."  And this

21  argument will have to be had at some point.

22         **MR. CORY:**  Or we'll consent.

23         **THE COURT:**  Or you'll agree.

24         **MR. IMBROSCIO:**  That's fair, Your Honor.

25         **THE COURT:**  On the notion that there's a possibility

1  of agreement, and one set of motions I don't have to rule on,

2  I'm willing to go along with this.

3      **MR. CORY:**  Okay.

4      **THE COURT:**  And then would it be your -- when does

5  the MDL panel meet next?

6      **MR. CORY:**  December 1.

7      **THE COURT:**  So actually on the December 14th date we

8  could take this up again, if necessary.

9      **MR. CORY:**  It will be on the agenda, one way or the

10  other.

11      **THE COURT:**  All right.  I'll keep my notes, then.  I

12  was all ready to go through, have an interesting discussion

13  with you about Bristol-Myers Squibb, and all sorts of things.

14      **MR. CORY:**  Bristol-Myers.

15      **THE COURT:**  I will hold off on that, keep my notes,

16  we'll discuss that at our next get-together.  Okay.

17      **MR. IMBROSCIO:**  The surpetition was filed on Friday.

18      **THE COURT:**  In BMS?

19      **MR. IMBROSCIO:**  Not surprising.

20      **THE COURT:**  Just for my edification, the position the

21  parties are taking before the MDL panel -- at least, what

22  you've publicly indicated at this point -- is everybody wants

23  the five hybrid cases to come here.  Correct?

24      **MR. IMBROCIO:**  Lilly agrees for the hybrid cases, it

25  makes rational sense for those cases to be litigated here.

1      **THE COURT:**  For the Lilly-only cases, what is the

2  position you're taking in terms of whether or not I have a

3  suddenly exploding -- well, I already had that, but I mean a

4  whole new world?

5      **MR. IMBROCIO:**  Our position is that, given the number

6  of cases and given the ability to coördinate informally, we

7  don't need to be consolidated.

8      **THE COURT:**  Okay.

9      **MR. IMBROCIO:**  But if the Panel decides --

10    We agree they should be before Your Honor if the Panel

11  does decide that those cases should be here.

12     **THE COURT:**  All right.  Okay.

13     **MR. IMBROCIO:**  You may not want that.

14     **THE COURT:**  Maybe after, now we've had several

15  meetings, you've changed your view.

16     **MR. CORY:**  No, Your Honor.  We love you.  We hope

17  we're not burdening with you Lilly.

18     **THE COURT:**  Sorry you're all subjected to the

19  uncertain weather of Northern California, but good flights back

20  for all of you.  Thank you.

21     (At 9:31 a.m. the proceedings were adjourned.)

22

23

24

25

1   I certify that the foregoing is a correct transcript from the

2   record of proceedings in the above-entitled matter.

3   *Lydia Zinn*

4   _____   October 18, 2016
    Signature of Court Reporter/Transcriber   Date

5   Lydia Zinn