Ernest Cory *(Admitted Pro Hac Vice)*
Alabama Bar No.: asb-2279-y83e
CORY WATSON, P.C.
2131 Magnolia Avenue
Birmingham, AL 35205
Telephone: (205) 328-2200
Facsimile: (205) 324-7896
Email: ecory@corywatson.com

*Lead Counsel for Plaintiffs*

Troy F. Tatting *(Admitted Pro Hac Vice)*
Minnesota Bar No.: 0354156
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN  55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
Email: ttatting@robinskaplan.com

*Counsel for Plaintiffs*
*On Behalf of Plaintiffs Executive Committee*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE:  VIAGRA (SILDENAFIL CITRATE) AND CIALIS (TADALAFIL) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to All Actions | Case No. 3:16-MD-2691-RS<br><br>MDL No. 2691<br><br>**REPLY IN SUPPORT OF PLAINTIFF EXECUTIVE COMMITTEE'S MOTION TO DISQUALIFY PROPOSED EXPERT DR. BORIS C. BASTIAN** |

Dr. Bastian consulted with Plaintiffs' counsel about confidential issues related to the biologic plausibility of PDE5 inhibitors and melanoma incidence. When Plaintiffs' counsel spoke with Dr. Bastian, it shared confidential information with him about Plaintiffs' views and theories of the scientific evidence in this case, as evidenced in the exhibits provided in support of Plaintiffs' motion. Now, Eli Lilly presents Dr. Bastian on the very same topic. Astoundingly, Eli Lilly's counsel admits in its response brief that it raced to retain Dr. Bastian even though it knew Dr. Bastian was actively communicating with Plaintiffs' counsel. Eli Lilly agreed to pay him an extra $400 per hour and Dr. Bastian switched sides.

This is precisely the type of situation that warrants disqualification. Finding in Eli Lilly's favor would encourage the poaching of experts by parties who discover experts who are consulting with the other side in civil cases.

**I.  Eli Lilly's Opposition Brief Further Demonstrates the Unfair Poaching Involved in Its Retention of Dr. Bastian.**

Eli Lilly admits it improperly raced to retain Dr. Bastian even after it knew Plaintiffs' counsel was engaging with him. Eli Lilly admits in a sworn declaration that its counsel knew Dr. Bastian was consulting with Plaintiffs' counsel. Gould Decl. ¶ 6. Eli Lilly further acknowledges that its counsel knew Plaintiffs had already exchanged documents with Dr. Bastian. *Id*. Eli Lilly knew or should have known that Dr. Bastian had exchanged confidential information and had already agreed to be a consultant for Plaintiffs. Yet Eli Lilly retained Dr. Bastian and did so at its own peril.

Conversely, when Dr. Ortiz-Urda had been contacted by Plaintiffs' counsel, she was adamant that counsel for Eli Lilly had not engaged with her for months, that she was no longer working for Eli Lilly, and that she had not received any confidential information whatsoever from Eli Lilly and had in fact told counsel for Eli Lilly that she thought melanoma could be linked to PDE5 inhibitors (which is why she suspected Eli Lilly no longer contacted her). Here, Plaintiffs' counsel was actively engaged with Dr. Bastian *who had agreed in an email to be*

*retained by Plaintiffs' counsel*, Tatting Decl. Ex. 3, but counsel for Eli Lilly poached Dr. Bastian nonetheless.

### II. Dr. Bastian's Sworn Declaration is Directly Contradicted By Evidence Plaintiffs Provided.

As part of Eli Lilly's eleventh hour attempt to salvage a tainted expert that it should have never retained in the first instance, it submits a sworn declaration from Dr. Bastian which contains statements at odds with evidence in the record. Dr. Bastian makes unsupported claims, self-serving to Eli Lilly, that Plaintiffs exchanged no confidential information with him and never asked him to treat his conversations as confidential. Plaintiffs have provided statements along with documented evidence establishing otherwise. *Compare* Bastian Decl. ¶ 3 *with* Tatting Decl. ¶¶ 3-13, Exs. 1-3, 5.

Dr. Bastian also suggests he did not realize Mr. Tatting was a lawyer for Plaintiffs. Bastian Decl. ¶ 3 ("I submit this Declaration … concerning contacts in September 2016—October 2016 between myself and Mr. Troy Tatting, *whom I now understand is a lawyer for plaintiffs in this litigation*." (emphasis added)). Yet, Plaintiffs presented both statements from Mr. Tatting as well as evidence establishing Dr. Bastian's awareness that Mr. Tatting represented Plaintiffs in this case. Such evidence includes documents that Dr. Bastian was interested in working with Plaintiffs, interested in serving as an expert in this case for Plaintiffs at an $800 hourly rate, agreed to meet in-person with Plaintiffs' counsel (including Mr. Tatting), received a document from Plaintiffs' counsel entitled "*Plaintiffs*' Position Statement Pursuant to Pretrial Order #1" (emphasis added), and even agreed with Plaintiffs' views and theories of the scientific evidence. Tatting Decl. ¶¶ 4-5, 7-15, Exs. 2-6.

Dr. Bastian makes additional sworn statements at odds with the record. He declares having received a document from plaintiffs entitled "Plaintiffs' Position Statement on Causation". Bastian Decl. ¶ 4.[1] Also, Dr. Bastian declares that, on September 8, 2016, he

---

[1] The document provided to Dr. Bastian (after Plaintiffs' counsel discussed Plaintiffs' confidential theories of the case with Dr. Bastian) was entitled "Plaintiffs' Position Statement Pursuant to Pretrial Order #1." *See* ECF Dkt. #53, Tatting Decl. ¶¶ 5-6.  The phrase "Plaintiffs' Position Statement on Causation" is found nowhere in this document.

3
REPLY IN SUPPORT OF PEC'S MOTION TO DISQUALIFY PROPOSED EXPERT DR. BORIS C. BASTIAN
CASE NO. 16-md-02691-RS

"advised [Plaintiffs' counsel] by e-mail" that he "was interested in being engaged as a consultant and was qualified to evaluate whether there was any causal relationship between melanoma and PDE5 inhibitors…."

Yet, Plaintiffs never approached Dr. Bastian to conduct a "causal" assessment. Such an assessment is something he is not even qualified to do. *See* Section IV (below). Indeed, Dr. Bastian's email from September 8, 2016, to Plaintiffs' Counsel makes no mention of a causal assessment. It states Dr. Bastian is "interested in serving as an expert in this case, as I think that my background might be helpful in analyzing this situation and crafting appropriate arguments." Tatting Decl. ¶¶ 8-9, Ex. 3.

Further, Dr. Bastian makes a demonstrably false post hoc statement designed to rehabilitate his rationale for receiving a consulting pay raise from Eli Lilly. He astonishingly declares he quoted Eli Lilly a higher rate for consulting because he did not understand Plaintiffs' counsel was asking him to be an expert witness, Bastian Decl. ¶ 11. Plaintiffs' counsel provided both statements and documents demonstrating otherwise, including an email that Dr. Bastian was *"interested in serving as an <u>expert in this case</u>"* for Plaintiffs at an hourly rate of $800. Tatting Decl. Ex. 3 (emphasis added).

### III. Eli Lilly's Opposition Brief Incorrectly Suggests Plaintiffs Could Not Have Retained Dr. Bastian Because He Disagreed with Plaintiffs.

Eli Lilly's attempts to salvage Dr. Bastian suggest that Dr. Bastian never agreed with Plaintiffs because he had supposedly never believed there is a "causal" connection between melanoma and PDE inhibitor use. *See, e.g.,* Bastian Decl. ¶¶ 5, 7, 8, 9. First, even if this was true, Dr. Bastian could still have been a consultant for Plaintiffs—*and indeed Dr. Bastian would have been a consultant for Plaintiffs had Eli Lilly's counsel never interfered with Plaintiffs' counsel's retention of Dr. Bastian*. Litigants are not required to hire only consultants who agree with their analyses or theories of scientific evidence.

Second, Plaintiffs provided evidence Dr. Bastian actually agreed with Plaintiffs' theories of the science. Plaintiffs provided the Court with evidence from 2016 that Dr. Bastian had

initially agreed with Plaintiffs' theories and understanding of the science, and that he held such opinions before attorneys for Eli Lilly had engaged him and agreed to increase his pay by 50 percent. Tatting Decl. ¶¶ 4, 7-13.

### IV. Eli Lilly Suffers No Prejudice From Dr. Bastian's Disqualification.

Eli Lilly has vastly overstated Dr. Bastian's role on its behalf and the relative prejudice it might suffer if he were properly excluded. Dr. Bastian has a limited overarching opinion in his report. Although Eli Lilly sprinkles "causation" terminology in its opposition brief and supporting materials, Dr. Bastian is not providing a full "causation" opinion in this case. Nor is he qualified to.

Dr. Bastian acknowledged at his deposition that he never performed a Bradford Hill causation assessment as part of his report in this case. Bastian Dep. at 39-40, Ex. A. ("That's correct" that a Bradford Hill review is not in his report and his report does not even mention Bradford Hill; asked only to opine on the possibility that PDE5 inhibitors *could be* a pathogenic factor in the formation or progression of melanoma). Dr. Bastian did not initially even understand what a casual assessment is, let alone conduct one in his report:

> Q. And you didn't do a causal assessment in [your] report, we know that, correct?
>
> A. What do you mean by "causal assessment"?
>
> Q. Do you know what a causal assessment is of the science?
>
> A. Well, can you explain it to me?
>
> Q. I just asked you, do you know what one is?
>
> A. Well, I assume it means assessing the cause and effect relationship.
>
> Q. Okay. And you didn't do that in [your] report; isn't that fair?
>
> A. Well that report, it doesn't allow – oh, you mean my report? Oh, okay. Well, I guess I looked for biologically plausible connection between pharmacologically inhibiting PDE5 and any aspects of melanoma progression.

Bastian Dep. at 128:7-23, Ex. B.

Dr. Bastian's report assesses biologic plausibility. Biologic plausibility is only one of many criteria to consider as part of a proper epidemiological causal assessment. Rothman et al., Modern Epidemiology, §1, Basic Concepts, Ch. 2, Causation & Causal Inference at 36-31 (3d Ed. 2008). "The starting point is an epidemiologic association"—and scientific epidemiological studies have demonstrated statistically significant increased risks of melanoma for users of PDE5 inhibitors. *Id.* at 28. Then, a scientist analyzes the biologic plausibility (amongst other criteria) to assess whether such an association might be causal in nature. *Id.* "Plausibility refers to the scientific plausibility of the association." *Id.* at 28-29.[2] It can be a subjective assessment, hypothetical, and is often based on disciplines beyond epidemiology, such as toxicology, pharmacology, basic biology, and other sciences. *Id.* This is why non-epidemiologists are often necessary to opine on biologic plausibility in order to inform an epidemiologist's causality assessment. Dr. Bastian is not an epidemiologist.

Here, in their opposition to this motion, Dr. Bastian and Eli Lilly's counsel conflate the two concepts of biological plausibility and general causation. As is clear from his report and deposition, Dr. Bastian did not perform a proper causality assessment. There is no prejudice to Eli Lilly in excluding Dr. Bastian because other non-epidemiologists like Dr. Bastian have also provided assessments on biologic plausibility. *Compare* Tatting Decl. Ex. 13 *with* Exs. 14-15 (all three expert reports mentioning biologically plausibility). Even if an expert is qualified under FRE 702, a court has broad discretion to exclude testimony under FRE 403 if its probative value is substantially outweighed by needless presentation of cumulative evidence. Fed. R. Evid. 403.

---

[2] *See also* FJC, Ref. Manual on Scientific Evidence, Ref. Guide on Epidemiology, Section V. General Causation: Is an Exposure a Cause of the Disease?, Subsection E. Is the Association Biologically Plausible (Consistent with Existing Knowledge)?, at 604, 620 (3d Ed. 2011) ("biological plausibility" defined as "consideration of existing knowledge about human biology and disease pathology to provide a judgment about the plausibility that an agent causes a disease" and noting this factor depends "on the extent of scientific knowledge about the cellular and subcellular mechanisms through which the disease process works.").

# CONCLUSION

Eli Lilly brought any prejudice it might suffer on itself. It made a brazen effort to retain Dr. Bastian even though it knew he was currently engaging with Plaintiffs' counsel in the very same case on the very same topic. Eli Lilly chose to throw caution to the wind and poached an expert. It should not be heard to complain of prejudice.

Eli Lilly was adamant that Dr. Ortiz-Urda be excluded in this litigation even though she never shared any confidential information with Plaintiffs' counsel (nor had she received any). For Eli Lilly, the risk that some confidential information might have impacted Dr. Ortiz-Urda was too much to stomach, warranting her exclusion. Now, even in the face of evidence that Plaintiffs shared confidential strategies and theories of the case on the very same topic for which Dr. Bastian now testifies, Eli Lilly makes a mind-boggling about-face. Their refusal to withdraw Dr. Bastian is wildly unfair especially given their unwavering demands that Dr. Ortiz-Urda be withdrawn.

The facts underlying this motion demonstrate unfairness and brash double-talk. A decision not to exclude Dr. Bastian would encourage poaching of witnesses and increases distrust and unfairness in the civil process. Plaintiffs respectfully request that the Court exclude Dr. Bastian as an expert for Eli Lilly.

Respectfully submitted,

Dated: November 15, 2018.   CORY WATSON, P.C

*/s/ Ernest Cory*
Ernest Cory

*Lead Counsel for Plaintiffs*

Dated: November 15, 2018.   ROBINS KAPLAN LLP

*/s/ Troy F. Tatting*
Troy F. Tatting

*Counsel for Plaintiffs*
*On Behalf of Plaintiffs Executive Committee*

**CERTIFICATE OF SERVICE**

I, Rachel Abrams, hereby certify that on this 15th day of November 2018, I electronically filed the foregoing with the Court using the CM/ECF system and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Rachel Abrams*
Rachel Abrams