# *In re Viagra and Cialis Products Liability Litigation*
## Daubert Hearing

Plaintiffs' Closing Statement

# Why We Go Forward

The Ninth Circuit has said you should consider "…whether the theory or technique employed by the expert is generally accepted in the scientific community…"

- *Wendell v. GlaxoSmithKline LLC,* 858 F.3d 1227 (2017) (citing *Daubert II*)

2

The Ninth Circuit has defined that this Court's task "is to analyze not what the experts say, but what basis they have for saying it."

- *Wendell v. GlaxoSmithKline LLC,* 858 F.3d 1227 (2017) (citing *Daubert II)*

# "Rule 702 should be applied with a 'liberal thrust' favoring admission"

- *Messick v. Novartis,* 747 F.3d 1193 (2014) (citing *Daubert)*

4

| | | Qualifications | Data | Methodology | Reliability |
|---|---|---|---|---|---|
| | Rizwan Haq, MD, PhD | YES | YES | YES | YES |
| | Anand Ganesan, MD | YES | YES | YES | YES |
| | Gary Piazza, PhD | YES | YES | YES | YES |
| | Feng Liu-Smith, PhD | YES | YES | YES | YES |
| | Sonal Singh, MD | YES | YES | YES | YES |
| | Rehana Ahmed-Saucedo, MD, PhD | YES | YES | YES | YES |

5

# *In re Roundup Products Liability Litigation*

"… the plaintiffs' presentation is that the evidence of a causal link between glyphosate exposure and NHL in the human population seems rather weak. Some epidemiological studies suggest that glyphosate exposure is slightly or moderately associated with increased odds of developing NHL. Other studies, including the largest and most recent, suggest there is no link at all."

6

# *In re Roundup Products Liability Litigation*

"However, the question at this phase is not whether the plaintiffs' experts are right. The question is whether they have offered opinions that would be admissible at a jury trial. And the case law—particularly Ninth Circuit case law — emphasizes that a trial judge should not exclude an expert opinion merely because he thinks it's shaky, or because he thinks the jury will have cause to question the expert's credibility. So long as an opinion is premised on reliable scientific principles, it should not be excluded by the trial judge…"

# Arozarena & Wellbrock 2017

**THE FEBS JOURNAL** — FEBS PRESS

## Targeting invasive properties of melanoma cells

Imanol Arozarena[1] and Claudia Wellbrock[2]

An important suppressor of melanoma cell invasion is the cGMP-specific phosphodiesterase PDE5A, which removes the cGMP required for $Ca^{2+}$ triggered actin–myosin contractility and invasion [60]. In line with such a suppressor role, a follow-up prospective cohort study linked the use of the PDE5 inhibitor sildenafil with an increased risk of melanoma, a correlation still under debate [61].

Arozarena & Wellbrock, p. 2153

8

**Original Investigation**

# Use of Phosphodiesterase Type 5 Inhibitors for Erectile Dysfunction and Risk of Malignant Melanoma

Stacy Loeb, MD, MSc; Yasin Folkvaljon, MSc; Mats Lambe, MD, PhD; David Robinson, MD, PhD; Hans Garmo, PhD; Christian Ingvar, MD, PhD; Pär Stattin, MD, PhD

**IMPORTANCE** The target for the oral erectile dysfunction drugs, phosphodiesterase type 5 (PDE5) inhibitors, is part of a pathway implicated in the development of malignant melanoma. An increased risk of melanoma in sildenafil users was recently reported.

➕ Supplemental content at jama.com

**OBJECTIVE** To exa
including data on

**DESIGN, SETTING,**
study in the Swed
health care registe
diagnosed from 2(
year of birth.

**EXPOSURES** Num
or tadalafil.

**MAIN OUTCOMES**
carcinoma in mult

**RESULTS** Of 4065
inhibitors, as did 1.
increased risk of m
most pronounced
(OR, 1.32 [95% CI,
significant among
CI, 0.95-1.37], 4%
0.95-1.44], 3% for
with melanoma st
stage I (OR, 1.21 [9
through IV (OR, 0.
were similar for sil
with an increased
for controls). Men
factors that were

**CONCLUSIONS AN[**
associated with a
However, the patt
prescriptions) rais

**Conflict of Interest Disclosures:** All authors have completed and submitted the ICMJE Form for Disclosure of Potential Conflicts of Interest. Dr Loeb reports receiving personal fees from Bayer and sanofi-aventis. Dr Lambe reports receiving personal fees from Pfizer. Dr Stattin reports receiving personal fees from Ferring and AstraZeneca. No other disclosures were reported.

and Breast, Lund University Hospital, Lund, Sweden (Ingvar).
**Corresponding Author:** Stacy Loeb, MD, MSc, 550 First Ave (VZ30, Sixth Floor 612), New York, NY 10016 (stacyloeb@gmail.com).

JAMA. 2015;313(24):2449-2455. doi:10.1001/jama.2015.6604

(Reprinted) **2449**

Copyright 2015 American Medical Association. All rights reserved.

Downloaded From: http://jama.jamanetwork.com/ by Jourdan Corbitt on 06/25/2015
JX093-0001

**COVINGTON**

BEIJING   BRUSSELS   DUBAI   JOHANNESBURG   LONDON
LOS ANGELES   NEW YORK   SAN FRANCISCO   SEOUL
SHANGHAI   SILICON VALLEY   WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 6000

**By Email and Federal Express**

March 12, 2018

Troy Tatting
Robins Kaplan LLP
800 LaSalle Avenue
Suite 2800
Minneapolis, MN 55402

Re: In re: Viagra (Sildenafil Citrate) and Cialis (tadalafil)
  Products Liability Litigation
  Dr. Stacey Loeb

Dear Troy:

Dr. Loeb has been retained through counsel as an expert witness on behalf of Lilly in this multi-district litigation and in its predecessor case, *Chaplain v. Eli Lilly and Company*, No. 3:15-cv-00887 (S.D. Ill.) since June 10, 2016.

her past, current, or future scientific research.

Lilly is unaware of documents or communications between Dr. Loeb and employees of Lilly concerning Dr. Loeb's scientific research regarding PDE5 inhibitors and melanoma. (Lilly believes that its sales representatives may have had routine contact with Dr. Loeb in her role as a practicing urologist.) Insofar as your document requests and interrogatories extend to communications with or documents held by "agents" of Lilly, including counsel, Lilly objects to those requests on the basis of attorney-client privilege and work product protection, as well as under Federal Rule of Civil Procedure 26(b)(4)(D). To the extent that Lilly ultimately determines that Dr. Loeb's opinions may be presented in this litigation, of course, we will make appropriate disclosures under Rule 26(b)(2)(B) and (4)(C).

Sincerely,

Emily Ullman

10



JNCI J Natl Cancer Inst (2017) 109(8): djx156

doi: 10.1093/jnci/djx156
First published online August 3, 2017
Corrigendum

## CORRIGENDUM

**Corrigendum:** "Meta-Analysis of the Association Between Phosphodiesterase Inhibitors (PDE5Is) and Risk of Melanoma" by Stacy Loeb et al. JNCI. J Natl Cancer Inst 2017; 109(8): doi:10.1093/jnci/djx086.

In th[e] estimat[ed] users ([RR =] 1.22)" s[…] cating [a] risk = 1[…]

The [sta]tistical[ly] high ex[…] indicat[…] should […] risk be[…] and ris[…] high-ri[…] biologi[c…]

In th[e] and tw[o] 866049 PDE5i u[…] [RR] = 1[…] The he[…] signific[…] case-co[…] identifi[…] nosed [with] melano[ma] = 1.02 […] reache[…]

In the seventh paragraph, the first sentence, "Only low PDE5i exposure was associated with increased risk (RR = 1.15, 95% CI = 1.01 to 1.31), whereas high exposure was not (RR = 1.09, 95% CI = 0.97 to 1.23) (Figure 1)" should instead read, "There was no difference in risk between men with low and high exposure to PDE5i (Figure 1)." The third sentence, "High PDE5i exposure was associated with an increased risk of stage 0 melanoma (RR = 1.45, 95% CI = 1.09 to 1.92), but decreased risk of stage II to IV melanoma (RR = 0.67, 95% CI = 0.46 to 0.97)" should instead read, "High PDE5i exposure was associated with an increased risk of stage 0 melanoma (RR = 1.22, 95% CI = 1.00 to 1.49), but not localized or high-stage melanoma."

In the eighth paragraph, the second sentence, "Sildenafil use was statistically significantly associated with melanoma (adjusted hazard ratio [HR] = 1.84, 95% CI = 1.04 to 3.22) but not with other skin cancers" should instead read, "Recent sildenafil [...]

CI = 0.98 to 1.19; excluding Matthews: RR = 1.11, 95% CI = 0.99 to 1.25; excluding Pottegard (DNHR): RR = 1.06, 95% CI = 0.96 to 1.18; excluding Pottegard (KPNC): RR = 1.15, 95% CI = 1.04 to 1.26." Should instead read: "Test for heterogeneity: A)P = .03, I$^2$ = 61.8%, T$^2$ = 0.0067. B)P = .03, I$^2$ = 67.8%, T$^2$ = 0.0193. C)P = .30, I$^2$ = 18.7%, T$^2$ = 0.0029. All statistical tests were two-sided. Summary risk estimate after exclusion of each respective study: excluding Li et al.: relative risk (RR) = 1.10, 95% CI = 1.02 to 1.19; excluding Loeb: RR = 1.09, 95% CI = 0.98 to 1.21; excluding Matthews: RR = 1.12, 95% CI = 0.99 to 1.27; excluding Pottegård (DNHR): RR = 1.15, 95% CI = 1.01 to 1.31; excluding Pottegård (KPNC): RR = 1.16, 95% CI = 1.04 to 1.29."

The "Notes" section of the paper should include the following sentences: "SL has grants from the NCI, NYS DOH and Prostate Cancer Foundation. SL also has received honoraria for lectures from Boehringer Ingelheim and MDx Health, consulting fees from Lilly, and reimbursed travel to a conference from Minomic."

© The Author 2017. Published by Oxford University Press. All rights reserved. For Permissions, please e-mail: journals.permissions@oup.com.

| | | | |
|---|---|---|---|
| ![Dr. Richard Marais] | Dr. Richard Marais | YES/NO | Wrong standard for biological plausibility |
| ![Dr. Lynn-Schuchter] | Dr. Lynn-Schuchter | YES/NO | Deposition testimony confirms that she deferred to other defense experts on biological plausibility<br>She is not an epidemiologist, and did not perform a Bradford Hill analysis |
| ![Dr. Boris Bastian] | Dr. Boris Bastian | YES/NO | Causation opinion<br>Wrong standard for biological plausibility |
| ![Dr. John Witte] | Dr. John Witte | YES | Stayed in his lane |

12